## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

CORIANA BENSON, on behalf of herself and all others similarly situated,

        Plaintiff,

    v.

THE HERTZ CORPORATION, HERTZ VEHICLES, LLC, DOLLAR RENT A CAR, INC., and THRIFTY RENT-A-CAR SYSTEM LLC,

        Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Coriana Benson ("Benson" or "Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, bring this action against Defendants, The Hertz Corporation, Hertz Vehicles LLC, Dollar Rent A Car, Inc. ("Dollar"), and Thrifty-Rent-A-Car System, LLC ("Thrifty") (collectively, "Hertz"). Plaintiff makes the following allegations upon personal knowledge as to her own acts, and upon information and belief, and investigation, as to all other matters, alleging as follows:

### INTRODUCTION

1.    This is a consumer protection action brought to redress and restrain a rental car company for a pattern of misconduct where by Hertz has falsely accused "hundreds of innocent customers of stealing its vehicles — accusations that, for some

customers, resulted in arrests, felony charges and jail time."[1] Specifically, lapses in Hertz's rental records led to errors which included not properly reflecting rental extensions in the computer systems, not rescinding police reports for cars that had been reported as stolen and then re-renting those vehicles, and negligently associating stolen cars with the wrong customer(s). "As a result of this routine and systemic mass reporting, without verification or investigation, many innocent customers have been wrongfully detained, arrested, thrown in prison, prosecuted, and had their lives destroyed."[2]

## NATURE OF THE ACTION

2.     This action seeks to recover damages for the injuries sustained by Plaintiff and others similarly situated as the direct and proximate result of Hertz's wrongful conduct, negligence, and defamatory statements in connection with its false reporting of stolen vehicles and lapses in rental records which led to individuals being falsely accused of theft, detained, arrested, prosecuted, and even jailed.

## PARTIES

3.     Plaintiff, Coriana Benson, is a resident and citizen of South Carolina, residing in the city of Myrtle Beach (Horry County). Plaintiff was previously a resident and citizen of Ohio at the time she rented the subject vehicle from Hertz.

4.     Defendant, The Hertz Corporation, is one of the largest worldwide

---

[1] https://www.npr.org/2022/12/06/1140998674/hertz-false-accusation-stealing-cars-settlement (last visited August 21, 2023).
[2] *Id.*

vehicle rental companies. It is a Delaware corporation with its principal place of business at 8501 Williams Rd, Estero, FL 33928. The Hertz Corporation conducts business throughout the United States, including in this District. The Hertz Corporation runs the car rental operations, vehicle control, corporate security, and all other functions pertinent to this action for itself and its subsidiaries, including Thrifty and Dollar. The Hertz Corporation's vehicle control and corporate security departments handle theft reporting for Hertz, Thrifty, and Dollar.

5.      Defendant, Hertz Vehicles LLC, is a is a Delaware corporation with principal executive offices located at 8501 Williams Road, Estero, Florida 33928. Hertz Vehicles LLC is the company that is listed as actually owning the vehicles rented out and reported stolen by The Hertz Corporation.

6.      Defendant, Dollar, is an Oklahoma corporation with principal executive offices located at 8501 Williams Road, Estero, Florida 33928. Dollar is a subsidiary of Hertz Corporation.

7.      Defendant, Thrifty, is an Oklahoma limited liability company with principal executive offices located at 8501 Williams Road, Estero, Florida 33928. Thrifty is a subsidiary of Hertz Corporation.

8.      Defendants are referred to jointly as "Hertz" throughout this complaint unless otherwise specified.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there is an aggregate amount in controversy exceeding

$5,000,000, exclusive of interests and costs, and (ii) Plaintiff and members of the proposed class are citizens of states different from Hertz's home state. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Hertz's principal place of business is in this District.

11.     This Court has personal jurisdiction over Hertz because its principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District. Hertz has sufficient contacts in Florida, as it conducts a significant amount of its business in the State of Florida.

## FACTUAL ALLEGATIONS

12.     There are numerous problems with how Hertz handles rentals, which lead to the wrongful detention, arrest, imprisonment, and/or prosecution of its customers, including Plaintiff and Class Members. Hertz knows the problems, yet it continues its misconduct. The systemic problems include: (1) failing to properly record rental extensions, (2) not investigating alleged thefts before filing theft reports, (3) reporting cars stolen without any knowledge or verification that they are stolen, (4) reporting cars stolen that were in Hertz's possession; (5) reporting cars stolen that were validly rented to customers, (6) renting stolen cars to customers, (7) not reconciling the cars in its inventory with the cars it has reported stolen and/or recovered, (8) failing to follow safeguards against false theft reports; (9) supplying false information in the theft reports; and (10) maintaining outdated computer systems that caused false accusations of theft.

13.     As a result of these problems, law enforcement labels innocent customers as felons driving stolen vehicles. When police spot one of these allegedly "stolen" vehicles on the road, the customer is subject to a felony traffic stop, often involving multiple officers surrounding the vehicle with guns drawn. The customer is then treated like a felon and often detained for several hours.

14.     On other occasions, like what happened to Plaintiff, law enforcement labels innocent customers felons during routine traffic stops, enforcing warrants issued based on Hertz's false stolen vehicle accusations.

**A. Hertz fails to properly record rental extensions.**

15.     Customers routinely seek to extend their rentals. Hertz welcomes the extension and provides several ways for a customer to extend the rental term, including calling or visiting the local branch, calling the 1-800 number, and/or using the app.

16.     Hertz provides verbal authorization for the extension and the customer continues the rental.

17.     Hertz's Vehicle Control Unit ("VCU"), the unit responsible for filing police reports, does not have access to the records of local branches or the call center documenting the extension.

18.     As a result, Hertz reports customers who rightfully believe they have validly extended their rental as having stolen the vehicle.

19.     Because Hertz fails to follow its own policies in place to prevent the filing of false police reports, as alleged below, the VCU is unaware of the extension and

proceeds with filing false police reports against innocent customers.

20.     In other cases, Hertz's central computer systems delete customer rental extension and backdate the rental due dates, resulting in false police reports claiming the customer never extended the rental term.

21.     Hertz typically charges customers at the end of the rental term. At the beginning of the rental term, Hertz places an authorization hold on the customer's credit or debit card to secure future payment.

22.     When a customer extends a rental term, Hertz attempts to place an *additional* authorization hold on the customer's debit or credit card, oftentimes unbeknownst to the customer, to ensure the customer has sufficient funds or credit to cover the cost of the rental.

23.     Sometimes, after agreeing to extend a customer's rental, the authorization hold is not accepted because the customer does not have sufficient funds or credit *at that time* (which is not an indication of the customer's willingness or ability to pay at the end of the rental term). In that case, Hertz—without notifying the customer—automatically deletes the extension date in its central computer system and back dates the due date to the original date.

24.     Hertz then reports the vehicle as stolen when it is not returned on the original due date, and upon information, denies the customer ever contacted Hertz to extend the rental.

**B. Hertz fails to track inventory and rents stolen vehicles.**

25.     Hertz is quick to report a vehicle stolen when it cannot find it. In most

cases, Hertz does not know if the vehicle is actually stolen; it only knows it cannot find the vehicle. These "missing" vehicles are often in Hertz's possession, custody, or control, in a Hertz lot or lawfully rented to a customer. Nonetheless, Hertz reports the vehicle as stolen to police.

**C. Hertz fails to follow safeguards against false police reports.**

26.     When a vehicle is allegedly missing, Hertz's VCU generates a "theft package," which Hertz provides to the police.

27.     Hertz's policy W7-02 governs its theft reporting process. Portions of W7-02, such as subparts (a)(4) and (17) and (E), contain sensible and vital safeguards against false reports, but Hertz fails to follow these policies and instructs its employees not to follow the policies.

28.     Hertz policy W7-02(a)(17) requires an investigation by a local security manager to confirm the accuracy of theft reports. Hertz, however, instructs the local security managers to skip the local investigation. Additionally, Hertz's VCU training materials actually direct employees to ignore the local investigation requirement of W7-02(a)(17). These unjustified directives result in virtually every theft report being unverified.

29.     Indeed, a Hertz corporate designee admitted during a 2017 trial that Hertz instructs corporate security managers to forego the required investigation. A simple investigation by Hertz that complied with its own policy would prevent Hertz from falsely reporting vehicles stolen and renting vehicles it reported stolen.

30.     Subsection (a)(4) requires the completion of a checklist for every theft

report to ensure compliance with all procedures and an accurate report. The checklist catalogues important details such as the vehicle's movement history, last known location, last known renter, and maintenance records. Hertz consistently ignores the checklist requirement when reporting vehicles stolen. On information and belief, Hertz did not complete the required checklist for the vehicles rented by Plaintiff and Class Members before filing a theft report.

31.    Hertz's policies, as noted in the theft packages, also require efforts to repossess the vehicle before reporting the vehicle stolen. None of the theft packages actually contain any documented effort to repossess a vehicle (beyond a notation that a vendor was hired, of which there are no other records).

32.    Indeed, Hertz reported the vehicles rented to Plaintiff and Class Members as stolen without any knowledge as to whether the vehicles were actually stolen.

**D.    Hertz fails to correct false police reports.**

33.    Hertz repeatedly refuses to withdraw theft reports, even when it has made an obvious error, which results in customers, like Plaintiff and Class Members, needlessly dealing with the criminal justice system, spending time and money to fix problems they did not cause. Incredibly, a Hertz spokesperson has admitted to news media that the company refuses to withdraw false police reports to hide the problems with its reports: "Hertz has no mechanism to withdraw a criminal referral because, the company spokesperson said, it has to maintain a relationship of 'integrity and responsibility' with law enforcement. 'In the rare instances this happens, if you report

a crime, and you later say it didn't happen, then law enforcement tends not to believe you if you retract it or say you were mistaken,' the spokesperson said. 'Hertz's continued good relationship with law enforcement is important.'"[3]

**E. Hertz maintains outdated computer systems.**

34.    Hertz maintains outdated computer systems. Hertz's departments are compartmentalized and do not share information.

35.    Hertz has tried to unify all its various computer systems, but the result has been abject failure. Instead of spending money to replace its broken systems, Hertz has decided to shift the costs for inventory control to the taxpayers and callously expose its customers to unlawful detention and/or arrest. In fact, when Hertz emerged from its bankruptcy under new management, it listed one of its priority tasks as fixing its computer systems.

**F. Hertz benefits from false police reports.**

36.    Hertz realizes that it is exponentially cheaper to file criminal theft reports, even if they are false, than to track down vehicles.

37.    By reporting vehicles stolen to the police, with little or no investigation or verification, Hertz also gets the following benefits:

a.    Hertz avoids spending money on personnel to verify that the theft reports are accurate and search for vehicles;

b.    Hertz does not have to spend money to update its rental systems which

---

[3] *See* Sam Wood, "Hertz Accused of Filing False Accusations of Theft," The Philadelphia Inquirer (Aug. 3, 2020).

are badly out of date;

    c.    The police immediately recover the vehicle at taxpayer expense, instead of Hertz hiring repossession services; and/or

    d.    Hertz writes off the rental car and/or makes an insurance claim for the "stolen" property and/or loss of business use. *See* W7-02(F).

**G. Hertz knows it files false police reports.**

38.    There has been extensive notice to Hertz that it has a serious false theft reporting problem. Hertz, however, ignores the problem because fixing it would decrease Hertz's profits.

39.    It is cheaper for Hertz to file police reports and have the policy try to recover stolen vehicles than for Hertz to correct its systems and follow its policies to prevent false police reports.

40.    Hertz is and has been aware of false theft reporting problems since at least 2016.

41.    For example, in or around 2016, various airport police departments held a conference call about deficient theft reports. Several airport police departments reported that Hertz was falsely reporting vehicles stolen that later turned up on Hertz's lots. As a result, several police departments stopped taking theft reports from Hertz and notified Hertz of these problems.

42.    In 2017, two separate juries found Hertz liable for falsely reporting vehicles stolen and, in each case, Hertz was exposed to punitive damages.

43.    There has also been significant nationwide news coverage of Hertz's false

theft report problem.[4]

44.     Further, in its now completed bankruptcy, where hundreds of police report victims filed claims, a Hertz designee admitted in sworn testimony that Hertz is aware of "inaccuracies" in Hertz's theft reporting.

## H. Hertz files false police reports and prosecutes customers for an improper purpose.

45.     Hertz's systems are old and not keeping track of inventory and rentals properly. Instead of investing in better tracking systems and spending the time and money to recover vehicles and investigate whether rentals are actually stolen, Hertz is filing police reports so the police recover the vehicle at taxpayer expense. Hertz *knows* that customers will almost certainly end up being arrested and prosecuted.

46.     Hertz's scheme seeks to utilize law enforcement as its own private repossession service, subjecting its customers, including Plaintiff and Class Members, to significant harm financial and emotional harm. Hertz is using the police and criminal justice system for an improper purpose, not to bring actual criminals to

---

[4] *See, e.g.*, Laura Layden, "Hertz Accused of Falsely Reporting that Customers Stole Rental Cars," Naples Daily News/USA Today (July 23, 2020); Chad Pradelli and Cheryl Mettendorf, "Action News Investigation: Customers sue Hertz for False Theft Claims," 6ABC Phila. (July 7, 2020); Sarah Buduson, "Hertz customers detained, arrested after rental vehicles mistakenly reported stolen," 5ABC Cleve. (May 21, 2019); Katie LaGrone, "Hertz has a pattern of mistakenly reporting cars stolen leaving customers arrested, attorney says," ABC Action News – WFTS Tampa Bay (May 9, 2019); Chad Pradelli and Cheryl Mettendorf, "Investigation: Hertz customers arrested after rental vehicles mistakenly reported stolen," 6ABC Phila. (May 18, 2018). See also, e.g., https://www.cbsnews.com/video/customers-allege-rental-car-giant-hertz-hadthem-falsely-arrested-some-jailed-for-stealing-cars/#x (Nov. 4, 2021) and https://www.cbsnews.com/video/claims-are-mounting-against-hertz-from-customers-who-saythey-were-wrongfully-arrested-for-rental-car-theft/ (Dec. 9, 2021).

justice.

47.     At all times relevant hereto, Hertz acted by and through its agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

**I.   Plaintiff's Experience**

48.     On or around December 10, 2019, Plaintiff rented a vehicle from a Thrifty at the Akron-Canton Airport location in Ohio.[5]

49.     Thereafter, Plaintiff called the Akron-Canton Airport Thrifty location and verbally requested an extension of the rental term, which she paid for over the phone with the credit card Thrifty had on file.

50.     At all times throughout the duration of her rental term, Plaintiff continued to make the required payments per the Rental Agreement and verbal extension.

51.     Plaintiff returned the vehicle on February 25, 2020, to Thrifty's Akron-Canton Airport location within Ohio.[6]

52.     After returning Hertz's vehicle, without notifying Plaintiff, Hertz accused Plaintiff of not returning said car and filed a false police report saying that the vehicle had been stolen and, furthermore, that Plaintiff had never paid to rent it.

53.     A warrant for Plaintiff was subsequently issued.

54.     On or around December 1, 2021, Plaintiff and her husband, Robert

---

[5] *See* Rental Agreement, attached hereto as **Exhibit A**.
[6] Exhibit A, Rental Agreement

Benson, were driving in Ohio after moving to South Carolina. Plaintiff's husband was driving their vehicle when the couple was pulled over allegedly for speeding outside of Marietta, Ohio.

55.     After running the occupants' identification, the officer came back and informed Plaintiff that she had a warrant out for her arrest. She was completely unaware of any warrant because Hertz had never informed her that Hertz contended she had stolen the vehicle she had rented and returned.

56.     The officer detained Plaintiff, handcuffed her, and placed her in the back of his squad car. Plaintiff was subsequently released and issued a summons to appear in court and posted bond.

57.     Plaintiff was consequently charged with a felony of the fifth degree – unauthorized use of a vehicle from Hertz.[7]

58.     Plaintiff hired an attorney for the felony charge. Made aware that if Plaintiff requested a jury trial and was ultimately found guilty, she faced a potential mandatory 6-12 month prison sentence, Plaintiff took action in the criminal cases to be granted relief as part of an Ohio Intervention in Lieu of Conviction Program, despite the fact that she had timely returned the vehicle in question to Hertz on February 25, 2020, as evidenced by the Rental Agreement.

59.     Plaintiff was ordered to pay $10,000 in restitution to Hertz and was put under control of the Ohio probation department for one year. Plaintiff is in the process

---

[7] *State of Ohio v. Coriana J.D. Benson*, Case No.: CR-2021-11-4265, Court of Common Pleas, Summit County, Ohio.

of completing her obligations to the State of Ohio, including paying restitution payments to Hertz. Her participation in the Ohio Intervention in Lieu of Conviction Program should result in the dismissal of the charge against her without adjudication of guilt or a criminal conviction.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a) and/or 23(b)(3). Specifically, the "Nationwide Class" and "South Carolina Subclass" are defined as follows:

**Nationwide Class:** All citizens of the United States who were falsely detained, arrested, prosecuted, and/or jailed in connection with Hertz's false reporting of stolen vehicles.

**South Carolina Subclass:** All citizens of the State of South Carolina who were falsely detained, arrested, prosecuted, and/or jailed in connection with Hertz's false reporting of stolen vehicles.

61.     The Nationwide Class and South Carolina Subclass are collectively referred to as the "Classes."

62.     Plaintiff is a member of each of the Classes.

63.     Excluded from the Classes are (a) any officers, director, or employees, or immediate family members of the officers, directors, or employees, of Hertz or any entity in which Hertz has a controlling interest; (b) any legal counsel or employee of legal counsel for Hertz; and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

64.     The proposed definitions of the Classes, as alleged above, may be amended or modified from time to time.

65. The members of the Classes are capable of being described without difficult managerial or administrative problems. The members of the putative Classes are also readily identifiable from the information and records in the possession or control of the Hertz or its affiliates and agents, and from public records.

66. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

67. The Classes are so numerous that joinder of all members is impracticable.

68. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

69. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The Classes number at least in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. Upon information and belief, Hertz has records identifying the Class Members who were the subject of stolen vehicle reports made to law enforcement agencies. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

70. **Existence and Predominance of Common Questions of Law and Fact – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule

23(c)(4), include without limitation:

a. Whether Hertz owed Plaintiff and Class Members a duty of care;

b. Whether Hertz breached a duty of care owed to Plaintiff and Class Members;

c. Whether Hertz published false statements about Plaintiff and Class Members to a third party;

d. Whether Hertz made an illegal, improper, or perverted use of process by filing false police reports and/or failing to correct information in the police reports that resulted in the detention, arrest, imprisonment, and/or prosecution of Plaintiff and Class Members;

e. Whether Hertz's actions caused police to unlawfully restrain Plaintiff and Class Members;

f. Whether Hertz engaged in extreme and outrageous conduct by filing false police reports and/or renting vehicles it incorrectly reported as stolen, that resulted in the detention and/or arrest of Plaintiff and Class Members; and

g. Whether Hertz is liable to the Class Members for the damages and losses, including nominal damages.

71. The questions set forth above predominate over any questions affecting only individual persons concerning Hertz's services throughout the United States and a class action is superior with respect to considerations of consistency, economy,

efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

72.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of those of the Classes in that the Class Members uniformly used Hertz's services and were subjected to Hertz's false stolen vehicle reports.

73.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Hertz, and/or substantially impair or impede the ability of Class Members to protect their interests.  In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action.  The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

74.     **Adequacy – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

75.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual victims, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated victims, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Hertz. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

76.     Additionally, the Classes may be certified under Rule 23(b)(1):

a.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Hertz; and/or

b.     The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## CAUSES OF ACTION

### COUNT I
### Negligence
### (For the Nationwide Class and South Carolina Subclass)

77.     Plaintiff incorporates by reference the allegations in paragraph 1-76 as though fully set forth herein.

78.     Plaintiff brings this count on behalf of herself and the Classes.

79.     Plaintiff and Class Members rented vehicles from Hertz or traveled in a vehicle rented from Hertz by a friend or relative.

80.     As one of the largest worldwide vehicle rental companies, Hertz had a negligence duty of care to Plaintiff and Class Members to engage in reasonable business practices and not to personally injure Plaintiff and Class Members, which included:

a.     Filing true and accurate police reports for allegedly stolen vehicles;

b.     Providing true and accurate information to police regarding allegedly stolen vehicles;

c.     Not renting cars reported stolen;

d.     Providing accurate information to police;

e.     Updating information and correcting false and misleading information provided to police regarding allegedly stolen vehicles;

f.     Tracking vehicles reported stolen in Hertz's systems;

g.     Maintaining records sufficient to avoid renting vehicles previously reported stolen;

h.     Adhering to corporate policies, including W7-02(a)(4) and (17); and

i.     Properly reporting and tracking vehicle rentals, including vehicle rental extensions.

81.    Hertz breached the negligence duty of care owed to Plaintiff and Class Members by, *inter alia*:

a.     Filing false police reports for allegedly stolen vehicles;

b.     Providing false information to police regarding allegedly stolen vehicles;

c.     Renting cars it had reported stolen;

d.     Providing inaccurate information to police;

e.     Filing police reports for an improper purpose;

f.     Failing to update information and correct false and misleading information provided to police regarding allegedly stolen vehicles;

g.     Failing to track vehicles reported stolen in Hertz's systems;

h.     Failing to adhere to corporate policies, including W7-02(a)(4) and (17);

i.     Failing to properly report and track vehicle rentals, including vehicle rental extensions; and/or

j.     Filing police reports for an improper purpose.

82.    Hertz knew it had a serious problem with making false police reports, keeping track of inventory, and renting vehicles it reported stolen. For instance, Hertz was aware of another lawsuit, *Grady v. The Hertz Corp.*, Pa. Ct. of C.P. Phil. Cnty., Civ. No. 1511-0380, in which the plaintiff was awarded punitive damages against Hertz for similar conduct. Hertz failed to correct these issues.

83.     Hertz also knew that its personnel were being directed to ignore W7-02(a)(4) and (17) and that police reports contained false information.

84.     Thus, Hertz knew or should have known that its conduct would result in the unlawful detention and/or arrest of Plaintiff and Class Members.

85.     The conduct of Hertz was not only negligent, but also grossly negligent, malicious, reckless, willful, and/or wanton, and demonstrated a total indifference to the lives of Plaintiff and Class Members and a conscious disregard for their rights and safety. Hertz knew or should have known that their conduct had a great probability of causing substantial harm, which it did.

86.     As a direct and proximate result of Hertz's actions and omissions, Plaintiff and Class Members were damaged in that they were falsely accused of theft, detained, arrested, prosecuted, and/or jailed.

87.     As a direct and proximate result of Hertz's conduct, Plaintiff and Class Members will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

88.     Due to the outrageous, malicious, reckless, and intentional nature of Hertz's conduct, Plaintiff and Class Members are entitled to punitive damages.

<u>**COUNT II**</u>
**Defamation**
**(For the Nationwide Class and South Carolina Subclass)**

89.     Plaintiff incorporates the allegations the allegations in paragraph 1-76 as though set forth fully herein.

90.     Plaintiff brings this count on behalf of herself and the Classes.

91.     As alleged herein, Hertz published false statements about Plaintiff and Class Members. Specifically, Hertz falsely accused Plaintiff and Class Members of stealing rented vehicles.

92.     Hertz made these false statements to a third party, the police and other law enforcement authorities.

93.     The falsity of the false statements Hertz made about Plaintiff and Class Members caused injury to Plaintiff and Class Members in that they were falsely accused of theft, detained, arrested, prosecuted, and/or jailed for crimes they did not commit.

94.     Hertz acted negligently in making the foregoing false statements about Plaintiff and Class Members, knowing or should have known Plaintiff and Class Members did not steal the rental vehicles had they complied with their policies and/or maintained adequate records regarding their vehicles.

95.     Plaintiff's and Class Members' reputations have been harmed as they now have public records of being falsely accused of theft, detained, arrested, prosecuted, and/or jailed.

96.     Plaintiff and Class Members have suffered and will continue to suffer

damage to their reputations as long as there are public records of being falsely accused of theft, detained, arrested, prosecuted, and/or jailed.

97.    Plaintiff and Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

## COUNT III
**Abuse of Process**
**(For the Nationwide Class and South Carolina Subclass)**

98.    Plaintiff incorporates the allegations the allegations in paragraph 1-76 as though set forth fully herein.

99.    Plaintiff brings this count on behalf of herself and the Classes.

100.    Plaintiff and Class Members have been subjected to criminal proceedings (including but not limited to detention, arrest and/or criminal prosecutions) brought by Hertz merely as a result of their rental car arrangements with Hertz.

101.    Hertz made an illegal, improper, or perverted use of process by filing false police reports and/or failing to correct information in the police reports, resulting in the detention, arrest, imprisonment, and/or prosecution of Plaintiff and Class Members.

102.    In filing these false reports, and continuing to have Plaintiff and Class Members subjected to prosecution, Hertz did not seek to bring a criminal to justice.

103.    At all times Hertz had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process. Specifically, Hertz used the criminal justice system, including the police and courts, for the improper purpose of serving as a taxpayer funded repossession service.

104.   Hertz received the following benefits by filing police reports against, bringing charges against, and/or prosecuting Plaintiff and Class Members:

a.     The police recovered the vehicle at issue at taxpayer expense, instead of Hertz hiring a repossession service;

b.     Hertz avoided spending money on personnel to verify if the reported thefts are accurate and search for the vehicle;

c.     Hertz did not have to spend money to update its rental systems which are severely out of date;

d.     Hertz wrote off the rental car and/or made an insurance claim for the "stolen" property and/or loss of business; and

e.     Hertz collected money from customers, like Plaintiff, who were falsely accused of owing money for call rentals despite having been fully paid under rental agreement.

105.   Hertz also admitted to news outlets using the criminal justice system (including the police and courts) for another ulterior purpose: to insulate Hertz from civil liability if there is an accident involving the rental car. According to Hertz, by reporting a car stolen, Hertz faces no civil liability if the car is in an accident during the rental.

106.   Hertz has committed, *inter alia*, the foregoing willful and improper acts and omissions during the prosecution of Plaintiff and Class Members that are not proper in the regular conduct of a prosecution.

107.   This nationwide scheme, which Hertz knows is immoral, unethical, and

illegal, is an outrageous and malicious abuse of the criminal justice system by a corporation. No other corporation routinely accuses its customers of theft and subjects them to being detained, arrested, prosecuted, and/or jailed, especially over civil payment disputes caused by the company's own poor management and inventory tracking.

108. Hertz never intended to fully and legitimately participate in the prosecution, but instead to use the criminal justice system as a taxpayer funded repossession service. Rather, Hertz knowingly and intentionally engaged in this scheme.

109. As a direct and proximate result of Hertz illegally and improperly using the criminal justice system for ulterior motives or purposes, Plaintiff and Class Members have suffered, and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

110. Hertz's behavior warrants punitive damages because its conduct is outrageous and demonstrates reckless disregard for Plaintiff's and Class Members' rights and life. Hertz's behavior is particularly outrageous in light of the fact that Hertz has been on notice for years that it is improperly causing the detention, arrest, prosecution, and/or imprisonment of innocent individuals.

**COUNT IV**
**False Arrest/Imprisonment**
**(For the Nationwide Class and South Carolina Subclass)**

111.   Plaintiff incorporates the allegations the allegations in paragraph 1-76 as though set forth fully herein.

112.   Plaintiff brings this count on behalf of herself and the Classes.

113.   Hertz deliberately provided false or inaccurate information to authorities in connection with vehicle theft reports.

114.   Hertz's actions caused police to unlawfully restrain Plaintiff and Class Members by threats of force and intimidation and the assertion of authority. Plaintiff and Class Members were not free to leave the scenes of the stops and arrests, and at times were jailed and/or subjected to bail/bond restrictions.

115.   The restraints imposed on Plaintiff and Class Members were unlawful and based upon false or inaccurate information intentionally provided to authorities by Hertz, i.e., that the vehicles rented by Plaintiff and Class Members were stolen.

116.   The restraints imposed on Plaintiff and Class Members were against their will and deprived them of their liberty.

117.   Plaintiff and Class Members were not engaged in criminal conduct and there was no probable cause for their detainment and/or arrest.

118.   As set forth herein, Hertz acted maliciously, knowingly, intentionally and/or, at least, recklessly by filing false theft reports and renting cars it wrongfully reported stolen that led to the restraint of Plaintiff and Class Members.

119.   As a direct and proximate result of the false, incomplete, and inaccurate

information provided to police, Hertz caused Plaintiff and Class Members to be wrongfully detained and/or arrested, or otherwise unfree to leave.

120.    As a direct and proximate result of Hertz's conduct, Plaintiff and Class Members have suffered, and will continue to suffer in the future, severe damages, including but not limited to monetary damages, loss of wages, loss of earning capacity, physical injury, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

121.    The behavior of Hertz warrants punitive damages because Hertz's conduct is outrageous and demonstrates reckless disregard for Plaintiff and Class Members' rights and lives. Hertz's behavior is particularly outrageous in light of the fact that Hertz has been on notice for years that it is improperly causing the detention and/or arrest of innocent individuals.

### COUNT V
**Intentional Infliction of Emotional Distress**
**(For the Nationwide Class and South Carolina Subclass)**

122.    Plaintiff incorporates the allegations the allegations in paragraph 1-76 as though set forth fully herein.

123.    Plaintiff brings this count on behalf of herself and the Classes.

124.    Hertz engaged in extreme and outrageous conduct by filing false police reports against their customers and/or renting customers' vehicles it reported stolen that resulted in the detention, arrest, prosecution, and/or jailing of Plaintiff and Class Members.

125.   Filing false police reports against their customers and/or renting customers' vehicles it reported as stolen is extreme and outrageous given that it is Hertz's job and duty to keep track of its inventory of available cars. Someone who rents a car from a rental car company is entitled to trust that he or she will not be pulled over for driving a stolen vehicle that was legally rented from Hertz, and treated like a felon. Hertz's misconduct thus exceeds the bounds of decency and is regarded as intolerable in a civilized community. Hertz's egregious and intolerable conduct in renting cars previously reported as stolen is exacerbated by the fact that Hertz does little, if anything, to correct or prevent these issues. Hertz's atrocious actions easily exceed poor judgment and border on the malicious.

126.   As set forth herein, Hertz's conduct was intentional and for a purpose other than bringing a criminal to justice. Hertz knew or should have known Plaintiff and Class Members were not guilty of any crimes. Hertz also knew or should have known that the vehicles it rented to Plaintiff and Class Members were incorrectly identified as stolen and should have corrected that status, withdrawn the police reports, or otherwise not rented the "stolen" vehicles. Hertz intentionally failed or refused to engage in these correction and verification efforts. This is more atrocious misconduct, given that Hertz's business it to rent vehicles to consumers like Plaintiff and Class Members.

127.   Hertz's conduct caused Plaintiff and Class Members to suffer extreme emotional distress. As a direct and proximate result of Hertz's conduct, Plaintiff and Class Members have suffered, and will continue to suffer in the future, severe damages,

including but not limited to monetary damages, loss of freedom, mental anguish, sleeplessness, restlessness, anxiety, humiliation, loss of reputation, depression, and both physical and mental pain, distress, and suffering.

128.   The behavior of Hertz warrants punitive damages because Hertz's conduct is outrageous and demonstrates reckless disregard for Plaintiff and Class Members' rights and lives. Hertz's behavior is particularly outrageous in light of the fact that Hertz has been on notice for years that it is improperly causing the detention and/or arrest of innocent individuals.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and members of the Classes, requests that the Court enter judgment in their favor and against Hertz, awarding as follows:

A.   Certifying the Classes as proposed herein, designating Plaintiff as class representative, and appointing undersigned counsel as Class Counsel;

B.   Declaring that Hertz is financially responsible for notifying the Class Members of the pendency of this action;

C.   Award all actual, general, special, incidental, punitive, and consequential damages to which Plaintiff and Class Members are entitled;

D.   Scheduling a trial by jury in this action;

E.   Awarding pre and post judgment interest on any amounts awarded, as permitted by law;

F.   Costs including reasonable attorneys' fees, court costs, and other

litigation expenses, as allowed by law; and,

G.    Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: November 3, 2023                              Respectfully Submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow (FL Bar No. 121452)
Jonathan Streisfeld (FL Bar No. 117447)
Kristen Lake Cardoso (FL Bar No. 44401)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Ste. 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com
streisfeld@kolawyers.com
cardoso@kolawyers.com

-AND-

Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com
blake.abbott@poulinwilley.com